# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **LDWB #2 LLC D/B/A LONESOME DOVE AUSTIN, A LIMITED LIABILITY COMPANY,** <br> *Plaintiff* <br><br> **v.** <br><br> **FCCI INSURANCE COMPANY,** <br> *Defendant* | **Case No. 1:20-CV-425-LY** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
   **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant FCCI Insurance Company's Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings, filed March 12, 2021 (Dkt. 29); Defendant FCCI Insurance Company's Opposed Motion for Protective Order, filed May 7, 2021 (Dkt. 33); and the associated response and reply briefs. The District Court referred the motions to the undersigned Magistrate Judge for report and recommendation and disposition, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.     Background

Plaintiff LDWB #2 LLC d/b/a Lonesome Dove Austin owns and operates the Lonesome Dove Austin restaurant, located at 121 West 5th Street, Austin, Texas 78701-2908 (the "Property" or the "Premises"). On June 15, 2019, Defendant FCCI Insurance Company issued Plaintiff a commercial property insurance policy (the "Policy") covering the Property from June 15, 2019 to June 15, 2020. Dkt. 26-1 at 5. The Policy generally provides coverage for "direct physical loss of or damage to" Plaintiff's Property and business personal property, with some exclusions. *Id.* at 28. At issue

here, the Policy contains a Business Income and Extra Expense Coverage Form providing for loss of business income and extra expenses (commonly referred to as "business interruption losses") sustained "due to the necessary 'suspension' of your 'operations' during the 'period of restoration'" where the suspension was "caused by direct physical loss of or damage to [Plaintiff's] property." *Id.* at 44. The Policy further provides civil authority coverage for loss of business income and extra expenses sustained when "a Covered Cause of Loss causes damage to property other than property at the described premises . . . caused by action of civil authority that prohibits access to the described premises." *Id.* at 45. The Policy also contains a virus exclusion provision excluding coverage for "loss or damage caused by or resulting from any virus." *Id.* at 55.

On March 11, 2020, the World Health Organization declared the COVID-19[1] outbreak a global pandemic. Dkt. 26 at ¶ 25. Shortly thereafter, state and local governments issued numerous civil authority orders (the "Civil Authority Orders") to protect public health by limiting the spread of COVID-19, including orders limiting gatherings and restricting operation of non-essential businesses such as bars and restaurants. For example, on March 14, 2020, the City of Austin issued an order banning community gatherings of 250 people or more, including such gatherings at bars and restaurants. Dkt. 26-2. On March 19, 2020, the Governor of Texas issued an executive order relating to COVID-19 preparedness and mitigation prohibiting "eating or drinking at bars, restaurants and food courts" from March 20, 2020 through April 3, 2020, subject to extension thereafter. Dkt. 26-3 at 2-3. The executive order encouraged Texans to use "drive-thru, pickup, or delivery options at restaurants and bars." *Id.* at 2. On March 24, 2020, the City of Austin issued a "Stay Home – Work Safe" order requiring all City of Austin residents to "shelter at their place of residence" through April 13, 2020, except to perform essential activities. Dkt. 26-4 at 2. The order

---

[1] COVID-19 is a disease caused by SARS-CoV-2 (the "coronavirus").

further stated that restaurants could remain open as "essential businesses," but could provide only delivery or carryout services. *Id.* at 5. Subsequent city and state orders limited the functions and capacity of restaurants. Dkt. 26 ¶ 32. On December 23, 2020, the City of Austin issued another order encouraging restaurants and bars to close indoor seating spaces and limit outdoor dining to fifty percent capacity. *Id.* ¶ 34.

As a result of the civil authority orders, Plaintiff alleges that its "bustling" restaurant was rendered "nonfunctional for its intended purposes" and that it suffered serious financial losses as a result. *Id.* ¶ 5. Plaintiff alleges that "the necessary suspension of Plaintiff's business operations caused by the Orders constitute a Covered Cause of Loss as defined in the Policy," and Plaintiff submitted a claim to Defendant to recover for those losses. *Id.* ¶ 39. Defendant denied the claim, contending that Plaintiff's losses were not covered under the terms of the Policy.

After Defendant denied its claim, Plaintiff filed this suit. Plaintiff asks the Court to issue a declaratory judgment under 28 U.S.C. § 2201 that:

> 1) The Civil Authority Orders constitute a direct physical loss of or damage to the Premises as defined in the Policy;
>
> 2) The necessary suspension of Plaintiff's business operations caused by the Civil Authority Orders constitute a direct physical loss as defined in the Policy;
>
> 3) The Civil Authority Orders constitute a prohibition of access to Plaintiff's Insured Premises by a Civil Authority as defined in the Policy;
>
> 4) The Civil Authority Orders trigger coverage under the Policy if Plaintiff can prove that there has been a direct physical loss of or damage to the property as defined in the policy;
>
> 5) The Civil Authority Orders trigger coverage under the Civil Authority provision of the Policy if Plaintiff can prove that there has been a physical loss of or damage to the property;

> 6) The presence of COVID-19 triggers coverage under the Policy if Plaintiff can prove that there has been a direct physical loss of or damage to the property as defined in the policy;
>
> 7) The required physical alterations triggers coverage under the Policy if Plaintiff can prove there has been a direct physical loss of or damage to the property as defined in the policy; and
>
> 8) The claim preparation coverage is available for making a claim under the Policy.

*Id.* ¶¶ 42-51.

Defendant now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Plaintiff's claimed losses due to the COVID-19 pandemic are not covered under the Policy because they do not constitute a "direct physical loss of or damage to" Plaintiff's Property.

## II. Legal Standards

The Court applies the following standards to the Motion for Judgment on the Pleadings.

### A. Rule 12(c)

The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the

reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

**B. Texas Insurance Law**

In a diversity action, federal courts are bound to apply the forum state's substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the Court must apply Texas law in this case, as the parties agree. "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010).

Unless the policy dictates otherwise, courts give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). If policy language can be given a definite or certain legal meaning, it is not ambiguous, and courts construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

> The paramount rule is that courts enforce unambiguous policies as written. . . . If an insurance contract, just like any other contract, uses unambiguous language, that's that. Our first task, then, is purely

5

> legal: deciding whether the Policy is ambiguous. And under Texas contract law, "ambiguity" means more than "lack of clarity." A policy is not ambiguous merely because different parties—or different judges—offer conflicting interpretations. . . . A policy is only ambiguous if, giving effect to all provisions, its language is "subject to two or more reasonable interpretations."

*Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020) (citations omitted). If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. *Id.*

### III. Analysis

Plaintiff argues that "the necessary suspension" of Plaintiff's business operations caused by the COVID-19 pandemic and related civil authority orders constitutes a covered loss under the business interruption loss provision contained in the Policy. Dkt. 26 ¶ 39. Defendant disagrees and argues that it is entitled to judgment because Plaintiff has failed to allege any direct physical loss or damage to its Property, which is a prerequisite to any business income, extra expense, and civil authority coverage under the Policy. Defendant contends that Plaintiff is attempting to recover for purely economic losses to its restaurant due to the COVID-19 pandemic, which are not covered under the Policy. Defendant further contends that even if Plaintiff had suffered a direct physical loss or damage to its Property, the virus exclusion provision would bar any coverage. The Court addresses each of these arguments in turn.

**A. No Coverage under the Business Income and Extra Expense Provision**

As noted, the disputed Policy is a commercial "Building and Personal Property" policy providing coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Dkt. 26-1

6

at 28. The Policy defines "Covered Causes of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 59. The Business Income (and Extra Expense) Coverage Form provides, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations.

*Id.* at 44. In other words, to trigger coverage under this provision, the insured party must show that there was a suspension of business operations stemming from a "direct physical loss of or damage to property." *Id.* The Policy does not define direct physical loss of or damage to property. The parties dispute whether business interruption losses due to the COVID-19 pandemic and related civil authority orders constitutes a direct physical loss of or damage to property.

1. **Loss of Use**

Plaintiff first argues that the civil authority orders caused it to suffer a direct physical loss of or damage to its business operations by depriving it of the ability to fully operate and use its restaurant as intended. Defendant argues that the Policy provides coverage for only direct physical loss or damage to property and not for loss of use of property for its intended purpose.

The Court finds Plaintiff's interpretation of the Policy to be unreasonable because it focuses on the word "loss" while ignoring the Policy's unambiguous requirement that there must be a "direct physical loss of or damage to property" in order to trigger coverage. *See Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 294 (S.D. Miss. 2020) ("Despite the disjunctive phrasing, with the modifying adjectives, the phrases are 'direct physical loss of property' or 'damage to property.' Either way, 'property' is involved."). Notably, the Policy is a commercial property insurance policy insuring Plaintiff's buildings, business personal property in

7

or around those buildings, and loss of income from losses to that property. Thus, "it makes logical sense that the property that is insured, *i.e.*, the building and/or personal property in or on the building, must first be lost or damaged before Business Income coverage kicks in." *Id.*

In addition, while the Policy does not define direct physical loss, the Policy contains a "loss of use" exclusion providing, in relevant part: "We will not pay for loss or damage caused by or resulting from any of the following: . . . b. Delay, loss of use or loss of market." Dkt. 26-1 at 61. This separate provision for loss of use suggests that the "direct physical loss of or damage to property" clause "was not intended to encompass a loss where the property was rendered unusable without an intervening physical force." *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 4:20 CV 1155 CDP, 2021 WL 37984, at *4 (E.D. Mo. Jan. 5, 2021). The Court finds that construing the Policy's requirement of "direct physical loss of or damage to property" to include the mere loss of use of the insured property "with nothing more would negate the 'loss of use' exclusion." *Id.*

Fifth Circuit case law also supports Defendant's argument that the Policy does not cover financial losses for mere loss of use or partial loss of use of property. In *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006), the Fifth Circuit stated that "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." The Court reasoned:

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Id.* (quoting 10A COUCH ON INS. § 148:46 ("COUCH ON INS.") (3d ed. 2005)). Thus, in order to trigger coverage under a commercial property policy, "physical loss" requires some "distinct,

8

demonstrable, physical alteration of the property," not merely an economic loss. *Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *6 (N.D. Tex. July 4, 2019) (quoting COUCH ON INS. (3d ed. 2010)); *see also Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) ("The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper.").

Although the Fifth Circuit has yet to address whether the COVID-19 pandemic and related civil authority orders can qualify as a physical loss of or damage to property under property insurance policies, district courts in this Circuit have determined that they do not.[2] In *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353 (W.D. Tex. 2020), owners of several barbershops sought coverage under their insurance policies for business interruption losses due to the COVID-19 pandemic and related civil authority orders. Senior District Court Judge David A. Ezra acknowledged that some courts outside the Fifth Circuit "have found physical loss even without tangible destruction to the covered property," such as when a noxious odor permeated a building, causing it to become uninhabitable. Nonetheless, Judge Ezra stated that, "within our

---

[2] The great majority of courts outside the Fifth Circuit also have held that COVID-19 and related civil authority shutdown orders do not constitute a direct physical loss of property under similar insurance policies. *See Promotional Headwear Int'l. v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1201 (D. Kan. 2020), *appeal filed*, No. 20-3594 (10th Cir. Jan. 4, 2021); *4431, Inc. v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 368, 383 (E.D. Pa. 2020)), *appeal filed*, No. 21-3000 (3rd Cir. Dec. 23, 2020); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1187 (S.D. Fla. 2020); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883 (S.D.W. Va. 2020), *appeal filed*, No. 21-1311 (4th Cir. Mar. 23, 2021); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 497 F. Supp. 3d 1203, 1212 (S.D. Ala. 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, 492 F. Supp. 3d 1051, 1056 (C.D. Cal. 2020), *appeal filed*, No. 20-56031 (9th Cir. Oct. 6, 2020); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 491 F. Supp. 3d 455, 456 (S.D. Iowa 2020), *appeal filed*, No. 203211 (8th Cir. Oct. 21, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693-94 (N.D. Ill. 2020), *appeal filed*, No. 21-1186 (7th Cir. Jan. 21, 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 842-43 (N.D. Cal. Sept. 14, 2020), *appeal filed*, No. 20-16858 (9th Cir. Sept. 24, 2020); *Turek Enters. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 501 (E.D. Mich. 2020).

Circuit, the loss needs to have been a 'distinct, demonstrable, physical alteration of the property.'" *Id.* at 359-60 (quoting *Hartford*, 181 F. App'x at 470). Because the coronavirus does not produce a direct physical loss to property like "a noxious odor that makes a business uninhabitable," the court found that plaintiffs failed to plead "a direct physical loss" to property to trigger coverage. *Id.* at 360.

Similarly, in *Steiner Steakhouse, LLC v. Amco Ins. Co.*, No. 1:20-CV-858-LY, 2020 WL 8879041, at *4 (W.D. Tex. Dec. 30, 2020), the District Court found that a commercial property insurance policy did not cover business interruption losses the plaintiff sustained during the COVID-19 pandemic. Although the insurance policy did not define "physical loss or damage to property," the District Court found that the phrase was not ambiguous and "has a legally established meaning—a 'distinct, demonstrable, physical alteration of the property.'" *Id.* at 3 (quoting COUCH ON INS. (3d ed. 2005)). The District Court reasoned that:

> [T]here is no coverage for "direct physical loss of or damage to property" because there is no "distinct, demonstrable, physical alteration of the property." Although Steiner Steakhouse may have suffered monetary losses, consumers may have avoided Steiner Steakhouse out of fear, and levers of government may have suspended Steiner Steakhouse's indoor dining business, none of these theories of recovery articulate a physical loss that is cognizable in Texas.
>
> ***
>
> Steiner Steakhouse's claim that consumers stayed away of their own volition, or in obedience to government orders, causing it to lose business income, does not qualify as "physical loss or damage" in Texas. Thus, there is no coverage under this provision.

*Id.* at 4; *see also Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-CV-665-RP, 2021 WL 972878, at *7 (W.D. Tex. Jan. 21, 2021) (holding that similar insurance policy did not provide coverage for insured restaurants' business interruption losses arising from COVID-19 government closure orders); *Real Hosp.*, 499 F. Supp. 3d at 295 (holding that suspension of dine-

10

in service at insured's restaurant as a result of executive orders by governor and mayor during COVID-19 pandemic was not caused by "direct physical loss of or damage to property," and, thus, policy provided no coverage for business income or extra expenses); *Hajer v. Ohio Sec. Ins. Co.*, 505 F. Supp. 3d 646, 650 (E.D. Tex. 2020) (rejecting plaintiff's argument that it suffered a physical loss under the policy where plaintiff suffered only economic damages and had not alleged any tangible damage or loss to his store).[3]

Based on the foregoing, the Court finds that "direct physical loss of or damage to property" is not ambiguous and requires a "distinct, demonstrable, physical alteration of the property." *Steiner Steakhouse,* 2020 WL 8879041, at *3. Plaintiff has failed to demonstrate that the suspension of its indoor dining business constitutes a "direct physical loss of or damage to property" because there was no distinct, demonstrable, physical alteration of the Property. Because Plaintiff was not operating its restaurant at full capacity, Plaintiff suffered financial losses. "But a monetary loss is not a 'distinct, demonstrable, physical alteration of the property.'" *Hajer*, 505 F. Supp. 3d at 650 (quoting *Hartford Ins. Co.*, 181 F. App'x at 470). Accordingly, Plaintiff cannot recover for financial losses incurred because of its inability to fully operate its restaurant during the COVID-19 pandemic.

---

[3] Plaintiff relies on several holdings from district courts outside of the Fifth Circuit to support its argument that COVID-19 can constitute a direct physical loss to property. *See Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, No. 20 C 2806, 2021 WL 767617, at *3 (N.D. Ill. Feb. 28, 2021) (finding that "direct loss" does not require a physical alteration of the insured's property); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 802-03 (W.D. Mo. 2020) (holding that insureds adequately alleged direct physical loss to property by alleging that COVID-19 made their businesses unsafe and unusable); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 876 (W.D. Mo. 2020) (finding that plaintiffs "plausibly alleged that COVID-19 caused their alleged physical loss"). The Court disagrees with these outlier cases and chooses to follow district court opinions in this Circuit, as well as "[t]he majority of courts to address the issue," which "have found that COVID-19 and governmental orders closing businesses to slow the spread of the virus do not cause physical damage or physical loss to insured property." *Uncork & Create*, 498 F. Supp. 3d at 882-83.

## 2. Plaintiff's Property Was Not Physically Damaged

Plaintiff also argues that it suffered a physical alteration of its Property because the civil authority orders prevented customers and employees from using the interior of the restaurant, and Plaintiff had to alter the physical layout of the restaurant and demarcated routes for customer traffic. The civil authority orders did not physically alter Plaintiff's Property; rather, they merely ordered Plaintiff to temporarily suspend dine-in services. "[A] regulation prohibiting people from patronizing a business is not a tangible alteration of any property. The regulation causes no changes to the structure of the property." *Hajer*, 505 F. Supp. 3d at 651. Courts have found that closing dining rooms, moving furniture, installing partitions and similar safety installations do not constitute physical loss of or damage to property. *See Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, No. 20-22055-CIV, 2021 WL 602585, at *9 (S.D. Fla. Feb. 16, 2021) ("The Policy simply does not provide Business Income coverage for Plaintiff's losses due to moving furniture and installing partitions."); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289, 1295 (N.D. Ga. 2020) (holding that governor's order prohibiting dine-in services did not constitute a "'physical loss of' the dining rooms"), *remanded on other grounds*, 2021 WL 1851381 (11th Cir. April 8, 2021). As the district court stated in *Henry's La. Grill*:

> the Order merely recognized an existing threat. It did not represent an external event that changed the insured property. Every physical element of the dining rooms—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—underwent no physical change as a result of the Order. The only possible change was an increased public and private perception of the existing threat, which cannot be deemed a physical change that rendered the property unsatisfactory. The Plaintiffs' construction would potentially make an insurer liable for the negative effects of operational changes resulting from any regulation or executive decree, such as a reduction in a space's maximum occupancy.

495 F. Supp. 3d at 1295.

Plaintiff's restaurant, moreover, continued to offer take-out services and, later, dine-in services in a limited capacity. Plaintiff remained in possession of its restaurant and all property therein throughout the pandemic. Thus, Plaintiff never was denied access to or use of its property. *See Mark's Engine Co.,* 492 F. Supp. 3d at 1057 (finding that restaurant owner "suffered no complete 'direct physical loss of' its property as it always had complete access to the premises even after the order was issued," and that "[t]he only individuals who could potentially claim 'direct physical loss of' access to the premises would be patrons who were no longer allowed to dine in"). Accordingly, Plaintiff did not suffer a direct physical loss to its Property from the issuance of the civil authority orders restricting its dine-in services. *See Steiner Steakhouse, LLC*, 2020 WL 8879041, at *4 (finding that restaurant did not suffer a physical loss or damage to property where "even if indoor dining was suspended, Steiner Steakhouse was still encouraged to use the property to provide take-away or delivery food service"); *Mark's Engine Co.*, 492 F. Supp. 3d at 1056 (finding that restaurant owner did not suffer a physical loss of its property due to civil authority orders prohibiting in-dining services where "Plaintiff remained in possession of its dining room, bar, flatware, and all of the accoutrements of its restaurant").

Plaintiff also argues that the COVID-19 pandemic itself causes direct physical damage to the Property. Plaintiff, however, does not allege that the virus actually was present at the Premises, merely speculating that "it is highly likely that COVID-19 has been present on the premises of the Insured Property" because "COVID-19 was present in property and spaces in the area surrounding the Insured Property." Dkt. 26 ¶ 38. The Court finds that Plaintiff's allegation that the virus likely contaminated its Property fails to raise a "right of relief above the speculative level." *Twombly*, 550 U.S. at 555. The fact that the virus was present in Austin, Texas at the time Plaintiff suffered economic losses does not support the assertion that it was "highly likely" that it existed on the

surfaces of Plaintiff's Property. Plaintiff does not allege that any infected individual ever was present on the Property, or that employees or customers came into contact with someone who was infected before entering the Property. "To accept Plaintiff's conclusory assertion would be to accept the proposition that any business located in a community with COVID-19 infections was likely contaminated with the virus." *Promotional Headwear*, 504 F. Supp. 3d at 1203. Such conclusory allegations are insufficient to state a plausible claim that Plaintiff's Property was damaged. *See Terry Black's Barbecue*, 2021 WL 972878, at *7 (finding that plaintiff's allegation that virus likely contaminated its property failed to raise right of relief above speculative level); *Hajer*, 505 F. Supp. 3d at 651 (finding no physical alteration to property where there was no pleading "that the virus itself was present on and altered the property").

Moreover, even assuming that the virus that causes COVID-19 was present at Plaintiff's Property, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. "The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property." *Uncork & Create*, 498 F. Supp. 3d at 883. Even when present, "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant." *Id.*; *accord Terry Black's Barbecue*, 2021 WL 972878, at *8. Plaintiff has not pled any facts showing that the coronavirus caused physical loss, harm, alteration, or structural degradation to its property. As the district court reasoned in *Uncork & Create*:

> COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk. Property, including the physical location of Uncork and Create, is not physically damaged or rendered unusable or uninhabitable. If people could safely congregate anywhere without risk of infection, the Plaintiff has alleged no facts to suggest any impediment to Uncork and Create's operation. No repairs or remediation to the premises are necessary

for its safe occupation in the event the virus is controlled and no longer poses a threat. In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses.

498 F. Supp. 3d at 884.

In essence, Plaintiff seeks insurance coverage for financial loss as a result of the civil authority orders issued in response to the virus. But "a loss of money" is not the physical loss of covered property required to trigger coverage under the Policy. *Steiner Steakhouse,* 2020 WL 8879041, at *4. Without a direct physical loss of its property, Plaintiff is not entitled to any business interruption losses under the Policy.

**B. No Civil Authority Coverage**

Plaintiff also fails to demonstrate that it is entitled to business interruption losses under the following "Civil Authority" provision:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Dkt. 26-1 at 45. Thus, to trigger coverage under this provision, Plaintiff must show (1) damage to other property, and (2) an order of civil authority prohibiting access to the other property after the property was damaged. Plaintiff meets neither element.

Just as the COVID-19 pandemic did not cause direct physical loss to Plaintiff's property, Plaintiff fails to show that there was direct physical loss to other property. *See Sandy Point Dental,* 488 F. Supp. 3d at 694 (holding that civil authority provision did not apply where there was no physical loss to other property). Plaintiff also does not allege that the civil authority orders were issued as a result of damage or loss to other property, but contends that those orders caused the property loss. The civil authority provision "requires the physical damage to prompt the act of civil authority, not the other way around." *Hajer*, 505 F. Supp. 3d at 652; *see also Steiner Steakhouse,* 2020 WL 8879041, at *5 (stating that in order to trigger civil authority coverage "the damage to property must precede the action of civil authority, which is 'taken in response to' the damage"). Moreover, while the civil authority orders limited Plaintiff's business operations, those orders did not prohibit Plaintiff from accessing the Premises. *See Sandy Point Dental*, 488 F. Supp. 3d at 694 (finding that civil authority provision did not apply because plaintiff failed to allege access to its premises was prohibited by government order). Accordingly, civil authority coverage does not apply in this case.

**C. Virus Exclusion Clause**

Even if the business interruption provision or the civil authority provision applied in this case, the Policy contains a virus exclusion clause that denies coverage if the alleged damage is caused by a virus. That clause provides, as relevant here:

> A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
>
> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Dkt. 26-1 at 55 ("Virus Exclusion").

The Virus Exclusion unambiguously states that Defendant "will not pay for loss or damage caused by or resulting from any virus." *Id.* Numerous district courts in this Circuit have found that similar virus exclusions bar coverage for business interruption losses during the Covid-19 pandemic. *See Frosch Holdco, Inc. v. Travelers Indem. Co.*, No. 4:20-CV-1478, 2021 WL 1232777, at *5 (S.D. Tex. Feb. 11, 2021); *Hajer*, 505 F. Supp. 3d at 652; *Real Hosp.*, 499 F. Supp. 3d at 297; *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1040 (W.D. Tex. 2020); *Diesel Barbershop*, 2020 WL 4724305, at *361-62.

Plaintiff argues that the Virus Exclusion should not apply here because it uses the word "virus" and not "pandemic." Courts have rejected this argument. *See Equity Plan. Corp. v. Westfield Ins. Co.*, No. 1:20-CV-01204, 2021 WL 766802, at *18 (N.D. Ohio Feb. 26, 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. CV 20-1869, 2020 WL 7395153, at *9 (E.D. Pa. Dec. 17, 2020). The lack of a specific reference to a pandemic in the Policy does not render the provision inapplicable because "there is no real distinction between 'virus' and 'coronavirus pandemic.'" *Newchops Rest.,* 2020 WL 7395153, at *9; *see also Equity Plan. Corp.*, 2021 WL 766802, at *18 ("To refer to COVID-19 as a 'pandemic' is to refer to the worldwide outbreak and spread of the disease caused by the COVID-19 *virus*."). The Virus Exclusion unambiguously excludes coverage for "loss or damage caused by or resulting from any virus." Dkt. 26-1 at 55. The coronavirus is "a virus which causes physical illness and distress." *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020). Therefore, the Virus Exclusion unambiguously bars coverage for Plaintiff's claims due to the coronavirus.

Plaintiff also argues that the Virus Exclusion should not apply here because Plaintiff's losses were caused by the civil authority orders prohibiting dine-in services, not the coronavirus itself. The district court rejected this argument in *Diesel Barbershop*:

> Guided by the plain language of the Policies, the Court finds that Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing.

479 F. Supp. 3d at 361.

The Virus Exclusion clearly and unequivocally exempts "loss or damage caused by or *resulting* from any virus." Dkt. 26-1 at 55. All of the loss or damage Plaintiff alleged in its Amended Complaint was caused by or resulted from coronavirus. Therefore, the Virus Exclusion applies and precludes all coverage. *See Real Hosp.*, 499 F. Supp. 3d at 297 (finding that identical virus exclusion provision applied where plaintiff's complaint "clearly demonstrates that all alleged loss or damage was caused by or resulted from COVID-19"); *Frosch Holdco, Inc.*, 2021 WL 1232777, at *5 (finding that virus exclusion applied where "Coronavirus is responsible, directly or indirectly, for all of the alleged loss Plaintiff has suffered."); *Hajer*, 505 F. Supp. 3d at 652 (finding that virus exclusion applied where Coronavirus "was in the chain of causation for its losses").

### D. Reasonable Expectations

Finally, Plaintiff argues that the Court should find coverage for its financial losses during the COVID-19 pandemic because "Plaintiff reasonably believed and expected that the pandemic was among the risks covered under its insurance policy with Defendant." Dkt. 26 ¶ 6. This argument fails because "Texas law does not recognize coverage because of 'reasonable expectation' of the insured." *Const. State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 410 n.4 (5th Cir. 1995).

### IV. Conclusion

In essence, Plaintiff seeks to recover economic damages it sustained as a result of the COVID-19 pandemic and associated civil authority orders under a commercial property insurance policy.

While the Court is not unsympathetic to Plaintiff's financial losses, the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property loss or damage to their property. As the district court in *Uncork & Create* reasoned:

> COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk.
>
> ∗∗∗
>
> In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The Court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.

498 F. Supp. 3d at 884. Accordingly, Defendant's Rule 12(c) Motion should be granted.

## V.     Order and Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant's Rule 12(c) Motion for Judgment on the Pleadings (Dkt. 295) and **DISMISS** Plaintiff's suit in its entirety.

Because the Court recommends that the District Court dismiss this case, Defendant's Opposed Motion for Protective Order (Dkt. 33) is **DIMISSED** as **MOOT**.

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the Honorable Lee Yeakel.

## VI.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 1, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE